# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

———————————————

La'mon Akemon,
     Petitioner,


       vs.                      Case No. 1:06cv166
                                      (Weber, S.J.; Black, M.J.)

Tim Brunsman,
     Respondent.

———————————————

## REPORT AND RECOMMENDATION

———————————————

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution in Chillicothe, Ohio, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition (Doc. 1) and respondent's return of writ with exhibits (Docs. 3, 6). Also pending before the Court for ruling is petitioner's motion to stay proceedings (Doc. 4), which is opposed by respondent (Doc. 5).


## Procedural Background

On October 17, 2003, the Hamilton County, Ohio, grand jury indicted petitioner on three counts of trafficking in cocaine in violation of Ohio Rev. Code § 2925.03(A) and one count of possession of cocaine in violation of Ohio Rev. Code § 2925.22(A); a major drug offender (MDO) specification was attached to each count. (Doc. 3, Ex. A). It appears from the record of a hearing on pretrial motions filed by petitioner's counsel that the "backbone" or "crux" of the State's case against petitioner was based on evidence provided by a confidential informant, who allegedly had purchased cocaine from petitioner. (*Id.,* Ex. M, Tr.

3-4).[1]

Petitioner initially entered a not-guilty plea, but on March 8, 2004, withdrew that plea and entered a guilty plea to two of the trafficking counts with specification in exchange for dismissal of the remaining counts. (*Id.,* Ex. B). According to the written plea agreement entered on the record, which was executed by petitioner and counsel, the "mandatory prison term" for the trafficking offenses to which petitioner pleaded guilty was "10 yrs," with a "potential sentence range" of "1-10" years on the attached MDO specifications. (*Id.*).

At the plea-taking hearing held on March 8, 2004, the following colloquy took place regarding the possibility prior to sentencing of petitioner's withdrawing his plea to reenter a new plea for an eight-year prison sentence:

> [THE PROSECUTOR]: Your Honor, this defendant has been out on bond since making bond at some point in the past, and we have agreed to a continuance for sentencing. He has entered a guilty plea to two counts, with MDO specifications.

> However, as long as he appears for sentencing, the State of Ohio would seek to – and the defense would, also, seek to withdraw the plea with the MDO spec, and re-enter a plea to F-1, carrying a three to ten range, so that the defendant would only receive an eight year sentence maximum.

> ****

> So the point is, it's not – we're not going to be asking for that ten years, it's going to be eight, so long as he appears for sentencing.

---

[1] It further appears from this record that the defense knew the confidential informant's identity and had investigated him to some extent. (Doc. 3, Ex. M, Tr. 8-9, 11-12). Apparently, on March 9, 2004, the informant, Dondi Anderson, entered a guilty plea to state drug possession and trafficking charges brought in January 2004. (*See id.,* Tr. 86-88, 98). Anderson previously had been convicted and sentenced on federal charges. (*Id.,* Tr. 87, 99). In the state case, Anderson was sentenced to a two-year prison term, to run concurrently with his federal sentence. (*Id.,* Tr. 89). It appears from the record that the concurrent sentence was granted as "consideration" for Anderson's willingness to provide testimony against petitioner, as well as for "things [Anderson] did in other cases." (*Id.,* Tr. 109-10, 112).

THE COURT:  Okay.

[THE PROSECUTOR]:  That's going to involve re-entering a new plea.

**** 

[DEFENSE COUNSEL]:  What I was going to say, counsel, succinctly, if he appears at the sentencing, the [plea] that we're entering now will be set aside, held for naught, and then we'll enter another plea, and that plea will be for a period of eight years total for all of the charges.

[THE PROSECUTOR]:  Correct.

[DEFENSE COUNSEL]:  That's my understanding.

**** 

THE COURT:  I want – and doing nothing else, you're asking me to sentence him then based on the new plea, to eight years?

[DEFENSE COUNSEL]:  Exactly.

THE COURT:  Okay.

[DEFENSE COUNSEL]:  If he helps or cooperates, then the State of Ohio's position, through its representative, would advise as to what the recommended plea should be.  It would be eight years or –

[THE PROSECUTOR]:  Correct.

[DEFENSE COUNSEL]:  Wouldn't be higher.

[THE PROSECUTOR]:  Wouldn't be higher.

THE COURT:  Just so you understand, Mr. Akemon, I don't want to

3

get into it too much, but if you cooperate, and the State indicates to me you cooperated in some other type of agreement, I would be willing to go along with that, where it's lower, okay?

But as I understand what's going on here today, if you show up the next time, sir, even though you're entering the plea to some very, very serious charges, next time there would be another plea where I would give you eight years [with] the Ohio Department of Corrections.

You understand that?

THE DEFENDANT:  Yes.

**\*\*\*\***

THE COURT:  Has anyone made any threats to you other than to prosecute the charge against you, in order to get you to plea?

THE DEFENDANT:  No, sir.

THE COURT:  As far as promises, for the record, Mr. Akemon, I'm sure you understand nobody is allowed to promise you anything.  But what I'm telling you, sir, is, based upon the representations made to me by your counsel, as well as the State, this appears to be a fair and just resolution of this matter.

If you show up the next time like you're supposed to, and do nothing else, I'm telling you right now, [it will] be my extremely strong inclination to sentence you to eight years [with] the Ohio Department of Corrections, plus costs.

If, in fact, sir, you do show up next time, and you have cooperated, I'll just leave it at that phrase, and the State indicates to me that they think it is worthwhile that you receive less time for your cooperation, I will certainly consider that, and then that's a possibility.

(*Id.,* Ex. M, Tr. 24-28).

4

Finally, at the close of the hearing, the trial judge personally addressed petitioner as follows:

> THE COURT: . . . .What this all means to you, Mr. Akemon, is, you can certainly remain out on the same bond.
>
> Without saying too much here in open court, you know what – you have an idea what "cooperation" is. Do what you have to do, sir, okay, within the limits of law. Certainly, anything you can do is going to be helpful for you.
>
> The worst thing you can do, sir, is, looking you straight in the eye, I'm telling you, worst thing you can do, sir, is not show up when you're supposed to.
>
> THE DEFENDANT: Yes.
>
> THE COURT: Not a good situation you're in, but it will get a lot, lot worse if you don't show up.
>
> THE DEFENDANT: Yes, sir.

(*Id.,* Tr. 41).

It appears from the record that prior to petitioner's entering his guilty plea on March 8, 2004, defense counsel met with an agent of the Regional Narcotics Unit (RENU), who agreed to entertain giving petitioner "further consideration" for a sentence lower than "the eight year agreed plea" if petitioner were to cooperate by providing information that would help lead to the arrest of a fugitive, Charles Bea, who was a "large narcotics dealer in the tri-state area." (*See id.,* Tr. 83-86). On March 9, 2004, petitioner contacted the agent and a meeting was arranged for March 10. According to the agent, petitioner provided no useful information or information that was false or otherwise failed to "pan[] out." (*See id.,* Tr. 86, 89-97, 115-34). The agent immediately informed petitioner that "we did not want to talk with him" any further "because he wasn't giving us information that was truthful." (*Id.,* Tr. 115, 122).

Soon thereafter, defense counsel filed a motion under Ohio R. Crim. P. 32.1, requesting that petitioner be allowed to withdraw the guilty plea that was entered

March 8, 2004. (*Id.*, Ex. C). Counsel contended that petitioner had the following "legitimate reasons" for withdrawing the plea:

> The State of Ohio has failed to fulfill its part of the plea bargain in that the government agreed to reduce the Defendant's sentence from eight years to six, five, four, three, two or one year(s) if the Defendant would provide substantial assistance and cooperation to the Regional Narcotics Unit. The Defendant met with the Regional Narcotics Unit and provided them with information that they utilized in the prosecution of others. However, the State of Ohio has not reduced the amount of time it seeks to impose as a sentence. . . . [T]he Defendant was also pressured by his attorneys to enter a plea of guilty. Defendant never wanted to take a plea in this case. However, not one, but both of his attorneys, pressured him into taking the plea. Finally, the Defendant maintains his innocence as a complete defense to the charge. Defendant does not believe that he is guilty of the offenses and took and passed a polygraph examination conducted by an expert to prove same.

(*Id.*).

After hearing counsel's arguments and considering evidence presented at a hearing held April 27-28, 2004, the trial court overruled petitioner's motion to withdraw his guilty plea. (*Id.*, Ex. M, Tr. 152-65). In so ruling, the court found as required under Ohio law in exercising its discretion to deny the Rule 32.1 motion that petitioner was "represented by highly competent counsel;" petitioner was "afforded all his rights" under Ohio R. Crim. P. 11 when he entered his guilty plea; the court conducted a "full and impartial hearing on the motion to withdraw the plea" and gave "full and fair consideration to the motion;" and that the motion was filed in a "reasonable time" prior to the scheduled sentencing date of April 12, 2004. (*See id.*, Tr. 152-55).

The court then considered the reasons asserted by petitioner for withdrawing his plea, finding no evidence in the record that petitioner was pressured by his counsel to enter the plea or that the State failed to "fulfill[] its aspect of the plea bargain." (*Id.*, Tr. 155-60). The court also rejected petitioner's claim of innocence, supported only by a "nonadmissible polygraph," when weighed against petitioner's admission of guilt at the plea hearing, which was made with full

6

"understand[ing] of the nature of the charges and possible penalties." (*Id.,* Tr. 160-61).

Finally, the court found that the State would be prejudiced by the withdrawal of the plea, because the confidential informant, who had entered a plea on March 9, 2004, would not be able to receive any benefit from the State at that point by coming to court and testifying against petitioner. (*Id.,* Tr. 161-62). The court concluded: "And if, in fact, [the informant] is brought back at this time, and doesn't testify, then Mr. Akemon has used the system to his benefit and to the detriment of justice, and that's not going to happen in this court." (*Id.,* Tr. 162).

The trial court next considered the "extraordinary situation" presented, which stemmed from the discussion at the original plea-taking hearing regarding the possibility of petitioner's reentering a new plea for an eight year prison sentence:

> . . . .The plea that I had before me does not allow me to give him the eight years because, and I will tell you and the RENU representative here, right here, right now, as well as the State, I will not again participate in a plea situation where it's counted upon the defendant to plea again in order to get a lesser sentence from the Court.
>
> So you can take that back to your bosses. I won't be involved in it again, because we're in a situation now, where, for me to give him the eight years that the deal was made for, he's going to have to enter a plea after we just went through a couple hours of him attempting to withdraw his plea.
>
> My suggestion is, I would ask you to think about this and maybe reconvene at a later time today, . . . is for the State to come forward to the Court and on your own, sua sponte, if you will, indicate to the Court that you're willing to reduce this to a situation where I could, in fact, go along with the prearranged plea bargain, and give him the eight years, so he does not have to re-enter a plea. Because I'm not sure where that leaves all of us, to be quite honest.

(*Id.,* Tr. 165-67).

7

Petitioner's sentencing was continued.  (*Id.,* Tr. 172-73, 187).  At the final hearing held on April 30, 2004, petitioner was offered the opportunity to reenter his plea in accordance with the "original plea arrangement" for an eight-year sentence.  (*Id.,* Tr. 195-96).  The trial court explained to petitioner that he would not forfeit his right to appeal the denial of his motion to withdraw his March 8, 2004 guilty plea if he were to enter a no-contest plea to "reduced charges so I can give you the eight years, which was the original plea arrangement."  (*Id.,* Tr. 196).  The court stated further:

> But if you proceed today and say, you know what, Judge, I'm not going to plead to anything, I'm going to go ahead and sentence you to what you've plead[ed] to already.  Which means, I'll be perfectly blunt, you're a smart guy, you can figure this out, I'm going to sentence you to ten years today.  Okay?  Ten years, read you your appellate rights, you go your way[,] I go mine.

(*Id.,* Tr. 196-97).

When petitioner replied by maintaining his innocence and complaining about his counsel's representation, the court stated that it was not going to re-evaluate petitioner's guilty plea, which "in my opinion [was] a voluntary, knowing and intelligent plea."  (*Id.,* Tr. 196-97).  After much discussion, with the prosecutor reiterating that the State would "abide by the original deal, which was, that the defendant could re-enter a plea to . . . eight years" (*see id.,* Tr. 206-07), the trial court proceeded to sentence petitioner in accordance with the parties' original plea agreement to concurrent ten-year mandatory terms of imprisonment for the two trafficking offenses.  (*Id.*, Ex. E).[2]  Before imposing sentence, the court stated in conclusion:

> Well, there is not a whole lot for me to say, Mr. Akemon, at this point. I don't think you chose the right decision at this point, but that's the way it goes.  I'm left, and again, I indicate on the record again, I was willing to go along with the eight years.  I thought that was fair.  But you put me in a situation where I can't do that.  So we'll leave it at that.

---

[2]  The court, in its discretion, did not impose any sentence for the MDO specifications. (Doc. 3, Ex. E & Ex. M, Tr. 209-10).

(*Id.,* Ex. M, Tr. 208).

With the assistance of new counsel, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District, wherein he asserted two assignments of error:

> 1.  The trial court erred when it overruled defendant-appellant's motion to withdraw plea.

> 2.  Defendant-appellant was deprived of the effective assistance of counsel.

(Doc. 6, Ex. F).

On December 15, 2004, the Court of Appeals overruled the assignments of error and affirmed the trial court's judgment.  (Doc. 3, Ex. H).  Petitioner's counsel appealed further to the Supreme Court of Ohio, which denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question" on April 27, 2005.  (*Id.,* Ex. K).

The trial court's docket records attached as an exhibit to the return of writ reveal that on April 18, 2005, during the pendency of petitioner's appeal to the Supreme Court of Ohio, petitioner filed a post-sentence motion to withdraw his guilty plea with the Hamilton County Common Pleas Court.  (*See id.,* Ex. L). Upon review of the state court's current docket records available on the internet, it appears that the motion was denied on October 26, 2006, and that on November 21, 2006, petitioner appealed this decision to the Ohio Court of Appeals, First Appellate District, where the matter is currently pending.  Petitioner also apparently filed another motion to withdraw his plea on December 22, 2006, which at this juncture is pending before the trial court for ruling.

Assisted by different counsel, petitioner filed the instant federal habeas corpus petition on March 23, 2006.  (*See* Doc. 1).  Petitioner alleges three grounds for relief:

> **Ground One:**  The trial court erred in denying defendant's motion to withdraw his guilty pleas.

**Supporting Facts:** The trial court refused to allow the defendant to withdraw his guilty pleas prior to sentencing. The defendant and the State of Ohio entered into an agreemen[t] where the defendant plead[ed] guilty to two of a four count indictment. The minimum on the plea was a mandatory sentence of 10 years. The deal was that defendant would receive 8 years if he did nothing but show up for sentencing. In order to accomplish this, defendant would have to withdraw his guilty plea and plead guilty to different charges.

**Ground Two:** Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with the understanding of the nature of the charge and the consequence of the plea.

**Supporting Facts:** The plea deal was that defendant was to receive a minimum of 8 years. However, he plead[ed] out to charges that carried a mandatory minimum of 10 years. The defendant's understanding was that if he cooperated with law enforcement, he would get less than 8 years. Defendant cooperated with law enforcement, law enforcement refused to work with him further. Instead of getting less than 8 years for his cooperation, he ended up with 10 years.

**Ground Three:** Denial of effective assistance of counsel.

**Supporting Facts:** The defendant was denied effective counsel because his attorneys allowed him to plea[d] to charges where the mandatory minimum sentence was 10 years even though the deal with the State of Ohio was that he was to receive a minimum prison term of 8 years.

(*Id.*, pp. 5-6).

Respondent concedes in the return of writ that the petition is not barred from review on statute of limitations grounds. (Doc. 3, Brief, p. 8). Petitioner has filed a motion to stay this action apparently until the state court proceedings on his post-sentence motions to withdraw his guilty plea are finally resolved. (Doc. 4). Respondent opposes the motion for stay because petitioner has exhausted his state court remedies to the extent his claims for relief were raised to and considered by

the state appellate courts in the direct review proceedings. (Doc. 5).

## OPINION

### A. Petitioner's Motion For Stay (Doc. 4) Should Be Denied

As petitioner has argued in his motion to stay the instant proceeding (Doc. 4), a federal habeas petition may in certain circumstances be stayed so that the petitioner can return to the state courts to pursue an unexhausted claim for relief. The Supreme Court has held, however, that the district court's discretion to issue a stay is circumscribed to the extent it must "be compatible with [the] purposes" of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Rhines v. Weber,* 544 U.S. 269, 276 (2005).

In *Rhines,* the Court pointed out that one of the AEDPA's purposes is to "reduce delays in the execution of state and federal criminal sentences" based on the "well-recognized interest in the finality of state judgments." *Id.* (quoting *Woodford v. Garceau,* 538 U.S. 202, 206 (2003), and *Duncan v. Walker,* 533 U.S. 167, 179 (2001)). In addition, the AEDPA's statute of limitations tolling provision was intended to "reinforce[] the importance of *Lundy*'s "simple and clear instruction to potential litigants: before you bring any claims in federal court, be sure that you first have taken each one to state court." *Id.* at 276-77 (quoting *Rose v. Lundy,* 455 U.S. 509, 520 (1982)).

The Court went on to determine that:

Stay and abeyance, if employed too frequently, has the potential to undermine these twin purposes. Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. . . .

For these reasons, stay and abeyance should be available only in limited circumstances.

*Id.* at 277.

The Court held that stay and abeyance "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," and that, "even if a petitioner had good cause for that failure," it would be an abuse of discretion for the court to grant a stay where the unexhausted claims "are plainly meritless" or the "petitioner engages in abusive litigation tactics or intentional delay." *Id.* at 277-78.  On the other hand, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  *Id.* at 278.

In this case, as respondent has pointed out in his response to petitioner's motion for stay (Doc. 5), petitioner has not identified the "gist of [his] current state court litigations."  Moreover, it appears that petitioner has exhausted his state court remedies to the extent he has already raised and had his claims for relief considered by the state courts on direct review of his conviction and sentence.

The exhaustion doctrine is not a jurisdictional requirement for habeas corpus review.  *Granberry v. Greer*, 481 U.S. 129 (1987).  A habeas corpus petition may be denied on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  *See* 28 U.S.C. § 2254(b)(2)).  For example, it has long been held that if the unexhausted claims are plainly meritless, it is in the interests of the parties and judicial economy to promptly address the merits of the petition without requiring exhaustion.  *See Greer,* 481 U.S. at 135; *Cain v. Redman,* 947 F.2d 817, 820 (6th Cir. 1991), *cert. denied,* 503 U.S. 922 (1992) (citing *Prather v. Rees,* 822 F.2d 1418, 1422 (6th Cir. 1987)).  In addition, a federal court should not dismiss a petition for failure to exhaust a remedy that would be futile to pursue.  *Castille v. Peoples,* 489 U.S. 346, 350-51 (1989); *Pillette v. Foltz,* 824 F.2d 494, 498 (6th Cir. 1987).

Here, although petitioner has filed post-sentence motions to withdraw his guilty plea which apparently are still pending before the state courts, the exhaustion requirement should be excused as futile.  *See id.*  The state appellate courts have already considered and rejected the claims that were raised by petitioner on direct appeal.

Even assuming, *arguendo,* that petitioner is pursuing relief in the state courts

12

based on claims that were not presented in the direct review proceedings, he has not demonstrated "good cause" for his failure to exhaust such claims or why the instant petition, which does not include such claims, should be stayed. In any event, as discussed *infra* pp. 13-27, petitioner's claims are "plainly meritless." Therefore, it is in the interests of both judicial economy and the parties for the Court to promptly address petitioner's grounds for federal habeas corpus relief despite the pendency of state court proceedings on petitioner's post-sentence motions to withdraw his guilty plea.

Accordingly, it is **RECOMMENDED** that petitioner's "Motion To Stay Proceedings" (Doc. 4) be **DENIED**.

**B.  Petitioner Is Not Entitled To Relief Based On His Claims Challenging The Denial Of His Motion To Withdraw His Guilty Plea, The Constitutionality Of The Plea, And Defense Counsel's Conduct During The Plea Proceedings**

In the petition, petitioner essentially contends that he is entitled to habeas corpus relief because (1) the trial court erred in denying his motion to withdraw his guilty plea, which was filed prior to sentencing; and (2) his conviction was unconstitutionally obtained based on a guilty plea that was not entered knowingly, intelligently and voluntarily in proceedings where he was ineffectively represented by counsel. (Doc. 1, pp. 5-6).

The Ohio Court of Appeals was the last state court to address the merits of these claims. Without citing Supreme Court precedents, the court evaluated the claims under state-law standards governing pre-sentence motions to withdraw guilty pleas. (*See* Doc. 3, Ex. H). In overruling the assignments of error, the court made the following factual findings, which are presumed correct under 28 U.S.C. § 2254(e)(1),[3] and reasoned in relevant part as follows:

---

[3] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner has neither cited nor presented any evidence to rebut the Ohio court's factual findings quoted herein. Therefore, petitioner has not demonstrated by clear and convincing evidence that such findings are erroneous.

. . . .The guilty plea was part of a plea bargain in which Akemon was initially to plead guilty to . . . two counts [of a four-count indictment] and face concurrent mandatory ten-year prison terms; however, it was understood that if he appeared at sentencing and cooperated with the police, the trial court would permit him to withdraw his original plea and to plead to a new combination of lesser charges that would have resulted only in an eight-year prison term.

The plea bargain fell apart, however, when Akemon moved to withdraw his plea prior to sentencing.  Rather than having a belated change of heart, Akemon claimed that he had consistently maintained his innocence and would not have entered into the plea bargain were it not for the pressure exerted on him by his attorneys.  His attorneys supported the motion by informing the court that they had done so because, in their view, the evidence against him was such that a plea bargain was in his best interest.  Although supportive of his motion, the attorneys made clear that they still felt it was in his best interest to accept the plea bargain.  Both attorneys suggested that Akemon's acceptance of the plea bargain centered on his expectation that if he cooperated successfully with the Regional Narcotics Unit (RENU), he would have been able to reduce his eventual prison time to less than eight years.  They indicated that Akemon's expectation in this regard was frustrated when RENU agents broke off communications with him after two meetings.

Also, as part of his motion to withdraw his plea, Akemon proffered that he had submitted to a polygraph test with a reputable polygraph examiner, and that he had "passed" the test.  Although acknowledging that the polygraph results were inadmissible at trial, Akemon argued that they demonstrated that he had a meritorious defense.

The state vigorously opposed allowing Akemon to withdraw his plea.  The state argued that its case against Akemon would be substantially prejudiced if the motion were granted.  The state's key witness, Dondi Anders[o]n, another drug dealer who had implicated Akemon, had since pleaded guilty to state charges and had already entered the federal prison system on federal charges.  The state argued that it had thus lost its leverage over Anders[o]n to testify against Akemon.  The

14

prosecutor stated, "It's going to be very hard for the state to try to talk him . . . into cooperating with the state when there is nothing we can do for him at this time." The state further contended that Akemon had strategically waited to move to withdraw his plea until after Anders[o]n had been effectively removed as a witness against him, a tactic made possible by the fact that Akemon had been informed in discovery when Anders[o]n would plead guilty to the state charges.

Joseph Lee, a RENU agent, testified at the hearing on Akemon's motion, outlining the state's case against Akemon and Anders[o]n's role in it. After RENU agents had arrested Anders[o]n with cocaine, Lee testified, Anders[o]n had told agents that the cocaine had been purchased from Akemon. Anders[o]n was then wired with a microphone and sent to meet with Akemon. According to Lee, during their conversation, Anders[o]n gave Akemon $11,500 in marked funds, representing an amount that Anders[o]n owed Akemon for a previous purchase of cocaine. Lee testified that the words "kilo" or "kilos" occurred often during the conversation, and that Akemon had arranged to sell Anders[o]n two more kilograms of cocaine. Akemon was arrested immediately afterward. In a subsequent police interview, Akemon claimed that the money that changed hands was for a previous loan that did not involve drugs.

Lee testified that Akemon had indicated during the original plea negotiations that he might have been able to help RENU agents capture a fugitive narcotics dealer, Charles Bea. Lee stated that he indicated to Akemon that if his information proved useful, RENU agents might have been willing to "entertain giving him further consideration beyond the eight-year agreed plea." But, Lee testified, after Anders[o]n had pleaded guilty to state charges, Akemon proved unwilling or unable to provide any information or to do anything to assist RENU agents in tracking down Bea. Later, Lee testified, Akemon "started talking about his case again," indicating that he and Anders[o]n had not been discussing cocaine in their taped conversation, but had been referring to marijuana. According to Lee, Akemon still did not provide him with any useful information or cooperation, and finally he gave up trying to solicit either.

15

The trial court, announcing its decision, fully agreed with the state that the effect of granting the motion would be to seriously damage the state's case against Akemon.  The court noted that it had reviewed "'everything that's been presented" and concluded that the "essence" or "backbone" of the case was Anders[o]n's testimony.  The court further indicated that it accepted the state's argument that it was questionable whether Anders[o]n would agree to testify against Akemon, having lost all incentive from a legal standpoint.  The court stated, "And if, in fact, [Anderson] is brought back at this time, and doesn't testify, then [Akemon] has used the system to his benefit and to the detriment of justice, and that's not going to happen in this court."

As this court has noted, although a trial court should liberally consider a motion to withdraw a plea prior to sentencing, a defendant does not have an absolute right to have his motion granted. . . .  In order to overturn the trial court's decision, a reviewing court must conclude that the trial court abused its discretion. . . .  "In determining whether the trial court has properly exercised its discretion in denying a Crim.R. 32.1 motion, the appellate court should consider a number of factors, including the following: (1) whether the defendant was represented by highly competent counsel; (2) whether the defendant was afforded a complete Crim.R. 11 hearing before entering the plea; (3) whether the trial court conducted a full and impartial hearing on the motion to withdraw the plea; (4) whether the trial court gave full and fair consideration to the motion; (5) whether the motion was made within a reasonable time; (6) whether the motion set out specific reasons for the withdrawal; (7) whether the defendant understood the nature of the charges and the possible penalties; (8) whether the defendant was possibly not guilty of the charges or had a complete defense to the charges; and (9) whether the state would have been prejudiced by the withdrawal." . . .

None of these factors weigh in favor of overturning the trial court's decision in this case.  Akemon, who was represented by highly competent counsel, struck a plea bargain very strongly in his favor given the evidence against him.  He was afforded a complete Crim.R. 11 hearing, as well as a full and impartial hearing on his motion to

16

withdraw the plea.  The trial court appears to have given full and fair consideration to the motion, assuring itself that Akemon had understood at the time of entering the plea the nature of the charges and the possible penalties.  Further, the trial court gave consideration to the possibility that Akemon was not guilty of the charges, but found that possibility unimpressive, particularly when compared to the prejudice that the state would suffer due to the loss of any leverage it might have otherwise had over Anders[o]n after he had pleaded guilty to the state charges.  As noted, the trial court strongly implied that it was in agreement with the state that Akemon's decision to withdraw his plea was motivated by his awareness that Anders[o]n had lost whatever legal incentive he may have had to testify against him.

Akemon argues, in this regard, that the state's theory of prejudice is not persuasive because of the state's position that it never offered Anders[o]n any promises or guarantees of consideration for his testimony.  But this argument ignores the testimony of Lee that Anders[o]n, though given no promises or guarantees pursuant to the office policy, was still very much aware that there was reason to believe that his cooperation would work to his legal advantage.  Lee testified that he was under the impression that Anders[o]n, with whom he had several conversations, had a strong "hope" that the state would give him a "break" should his testimony prove useful in convicting Akemon.  He also testified that it was after Anders[o]n refused to talk to Akemon's attorney on the morning of Akemon's trial that Akemon agreed to enter a plea.

As for Akemon's claim of innocence, we note, as did the trial court, that the results of the polygraph examination would not have been admissible at trial.  Further, Lee's testimony that Akemon tried to convince him that his conversation with Anders[o]n was about marijuana, not cocaine, casts a considerable cloud upon his credibility since he originally claimed that the conversation did not involve drugs but was about an old loan.  We also note that Lee's testimony corroborated the view of counsel representing Akemon that the evidence against him on the original four counts weighed strongly in favor of accepting a plea bargain.

17

Finally, Akemon argues that the trial court breached the plea
agreement by sentencing him to ten years in prison rather than eight.
But it is clear from the record that the trial court was willing to let
Akemon withdraw his plea in order to enter a new plea to reduced
charges that would have allowed him to receive an eight-year prison
term, but that Akemon was simply unwilling to enter a new guilty
plea, having taken the position that he was innocent of all the charges.
Indeed, at times the tone of the trial court was almost beseeching a[s]
it attempted to implement the original agreement, only to be frustrated
by Akemon's intransigence.  It should be pointed out, also, that the
trial court was still willing to give Akemon an eight-year prison term
on reduced charges even though, according to Lee, his cooperation
had proved to be largely useless.  Thus, any failure to execute that part
of the original plea bargain that would have resulted in an eight-year
rather than a ten-year prison term was entirely of Akemon's own
doing.

(*Id.,* pp. 1-7) (state case citations omitted).

In this case, the state appellate court evaluated the merits of petitioner's
claims under an "abuse of discretion" standard of review established in Ohio for
reviewing rulings on Rule 32.1 motions to withdraw guilty pleas.

In the usual case, a federal habeas petitioner is not entitled to relief unless
the state court's adjudication of his constitutional claim resulted in a decision that
(1) was contrary to, or involved an unreasonable application of, clearly established
federal law as determined by the United States Supreme Court, or (2) was based on
an unreasonable determination of the facts in light of the evidence presented in the
state court proceedings.  *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529
U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue).
However, in a case such as this, where the state court addressed petitioner's claims
solely in terms of state law, the federal court must conduct a *de novo* review,
instead of applying the more deferential standard of review set forth in § 2254(d).
*Clinkscale v. Carter,* 375 F.3d 430, 436 (6th Cir. 2004), *cert. denied,* 543 U.S. 1177
(2005); *Maples v. Stegall,* 340 F.3d 433, 436-37 (6th Cir. 2003) (citing *Wiggins v.*

*Smith,* 539 U.S. 510 (2003)).[4]

As an initial matter, the Court is precluded from reviewing any claim that the trial court abused its discretion under Ohio law in denying petitioner's Rule 32.1 motion to withdraw his guilty plea.  A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law."  28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"); *cf. Lor v. Lafler,* No. 05-cv-70357-DT, 2006 WL 1007647, at *2 (E.D. Mich. Apr. 18, 2006) (unpublished) (holding that petitioner was not entitled to habeas corpus relief based on the claim that trial court erred under state law in denying his pre-sentence motion to withdraw his guilty plea).

Moreover, as the Ohio Court of Appeals pointed out, petitioner is unable to prevail on any claim that he had an absolute right to withdraw his guilty plea prior to sentencing.  *See, e.g., Hoffman v. Jones,* 159 F.Supp.2d 648, 655 (E.D. Mich. 2001) (citing *United States ex rel. Scott v. Mancusi,* 429 F.2d 104, 109 (2nd Cir. 1970), *cert. denied,* 402 U.S. 909 (1971)), *aff'd,* 53 Fed.Appx. 342 (6th Cir. 2002), *cert. denied,* 540 U.S. 1193 (2004); *Lyons v. Jamrog,* No. 2103-cv-328, 2005 WL

1308233, at *7 (W.D.  Mich. June 1, 2005) (unpublished) ("a state defendant has no constitutionally guaranteed right to withdraw a guilty plea"); *cf. Carwile v. Smith*, 874 F.2d 382 (6th Cir. ), *cert. denied,* 493 U.S. 943 (1989); *Salter v. Tambi,* No. 1:04cv1682, 2006 WL 2360924, at *7 (N.D. Ohio Aug. 15, 2006) (unpublished) (and cases cited therein).

Therefore, petitioner is not entitled to relief based on the trial court's discretionary decision to deny his pre-sentence motion to withdraw his guilty plea absent "a showing that [he] was denied fundamental fairness."  *See Coddington v. Langley,* 202 F.Supp.2d 687, 703 (E.D. Mich. 2002), *rev'd on other grounds,* 77

---

[4] *See also Joseph v. Coyle,* 469 F.3d 441, 450 (6th Cir. 2006) (and cases cited therein), *cert. denied,* 127 S.Ct. 1827 (2007); *Towns v. Smith,* 395 F.3d 251, 257 (6th Cir. 2005); *Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003).

19

Fed.App.x. 869 (6th Cir. 2003), *cert. denied,* 541 U.S. 1066 (2004).[5]

The inquiry as to whether the trial court's challenged decision implicates constitutional concerns turns on whether the plea, which the petitioner sought to withdraw, was entered knowingly and voluntarily or, in other words, "represents a voluntary and intelligent choice among the alternative courses of action open to [him]." *Salter, supra,* 2006 WL 2360924, at *7 (quoting *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)); *Sparks v. Sowders,* 852 F.2d 882, 885 (6th Cir. 1988); *see also Boykin v. Alabama,* 395 U.S. 238, 242 (1969).[6]

To enter a plea knowingly and intelligently, the defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Brady v. United States,* 397 U.S. 742, 748 (1970); *McAdoo v. Elo,* 365 F.3d 487, 494 (6th Cir.), *cert. denied,* 543 U.S. 892 (2004). Because the decision whether or not to plead guilty ultimately rests with the defendant, defense counsel "must ensure that [his] client's decision is as informed as possible." *Lyons v. Jackson,* 299 F.3d 588, 598 (6th Cir. 2002), *cert. denied,* 537 U.S. 1179 (2003).

In *Carwile,* 874 F.2d at 385, the Sixth Circuit quoted the following passage in *Brady* as providing guidance for determining whether a guilty plea is "fundamentally fair:"

[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no

---

[5] *See also Hoffman*, 159 F.Supp.2d at 655 ("[u]nless the pleas violated a clearly-established constitutional right, the allowance of withdrawal of no contest pleas is discretionary with the trial," the abuse of which "generally is not a basis for habeas corpus relief").

[6] *Cf. Lyons, supra,* 2005 WL 1308233, at *7 ("The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards first set forth by the Supreme Court in *Boykin.* . . .").

proper relationship to the prosecutor's business (e.g. bribes).

*Brady,* 397 U.S. at 755 (citation to internal quotation omitted); *see also Mabry v. Johnson,* 467 U.S. 504, 509 (1984). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, [due process requires that] such promise must be fulfilled" or the defendant must be allowed to withdraw his plea. *Santobello v. New York,* 404 U.S. 257, 262-63 (1971).

In assessing whether or not a guilty plea meets the standards of due process, the Court must look at the totality of circumstances surrounding the plea. *Brady,* 397 U.S. at 748-49. Generally, in a collateral review proceeding such as this, where the petitioner has the "heavy burden" of overcoming the "'presumption of regularity' that attaches to final judgments," *Parke v. Raley,* 506 U.S. 20, 29-30 (1992); *Garcia v. Johnson,* 991 F.2d 324, 328 (6th Cir. 1993), an affirmative showing that the plea was voluntary and intelligent is made by the State's production of the transcript of the state-court proceedings. *McAdoo,* 365 F.3d at 494 (citing *Garcia,* 991 F.2d at 326).

When a prisoner challenges his guilty plea on the basis that it was induced by an unkept promise, the Court must determine whether the allegation, when viewed against the record of the plea hearing, is so palpably incredible, so patently frivolous or false, as to warrant a summary dismissal. *Blackledge v. Allison,* 431 U.S. 63, 76 (1977). In applying this standard, the Court will indulge a strong presumption that statements made by the parties at the plea hearing were truthful. *Id.* at 74.

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.*

In this case, petitioner has suggested in Grounds One and Two of the petition

that his plea was not knowing or voluntary because (1) he was unable to receive an eight-year sentence for showing up for sentencing, which was part of the parties' original plea bargain, except by withdrawing his guilty plea and reentering a plea to different charges; and (2) despite his attempts to "cooperate" so that a reduced sentence of less than eight years would be entertained as promised by the State, law enforcement "refused to work with him." These arguments lack merit and, in any event, are insufficient to establish that petitioner's solemn declaration of guilt on March 8, 2004 in proceedings held in accordance with Ohio R. Crim. P. 11 was unknowing or involuntary.

First, upon review of the executed plea entry and transcripts of the plea and sentencing hearings, it appears clear that petitioner was fully aware of the "relevant circumstances and likely consequences" of his plea to the two drug trafficking counts carrying a mandatory minimum ten-year prison sentence, which was subject to reduction to an eight-year sentence if petitioner were to show up for sentencing, or an even lesser sentence if recommended by the State based on his cooperation "in some other type of agreement." (*See* Doc. 3, Ex. E & Ex. M, Tr. 24-30). Before the trial court accepted petitioner's guilty plea, the parties discussed at great length that it was their understanding that imposition of the agreed-upon maximum eight-year sentence would necessarily entail the withdrawal of petitioner's plea and reentry of a new plea to reduced charges at the sentencing hearing. (*Id.,* Ex. M, Tr. 24-28).

At the plea hearing, the prosecutor presented the facts underlying the trafficking charges–i.e., as charged in Count One of the indictment, petitioner "sold approximately two kilograms of cocaine to another" on October 8, 2003 in the area of Alston Car Wash on Dana Avenue; and as charged in Count Four, on October 9, 2003, at a Montgomery Road address, petitioner "accepted $11,500 in cash that was owed as a final payment for the two kilos" and "offered to sell another two kilograms for $25,000 each." (*Id.,* Tr. 22-23). In response to the court's questions, petitioner, then 40 years old and a high-school graduate with a two-year degree in engineering, stated he understood the charges, was making the plea of his own free will in the absence of any threats, and that by entering the plea, he was "making a complete admission of [his] guilt." (*Id.,* Tr. 27, 35-36).

At the plea hearing, the court indicated that the only "promises" made were for the eight-year sentence if petitioner showed up for sentencing and consideration for an even further reduction in sentence if petitioner were to "cooperate, and the

22

State indicates . . . you cooperated in some other type of agreement." (*See id.,* Tr. 26-29). Although the reduced sentence contemplated by these "promises" did not come to pass, petitioner is unable to prevail on any claim that his plea was rendered involuntary because of the failure of the court, prosecutor or his own counsel to fulfill any commitment made to him that induced him to enter his guilty plea. *See Brady,* 397 U.S. at 755; *see also Mabry,* 467 U.S. at 509; *Santobello,* 404 U.S. at 262-63; *Hentz v. Hargett,* 71 F.3d 1169, 1176 (5th Cir.) ("when the defendant, rather than the prosecutor, breaches the [plea] agreement, the voluntariness of the plea is not at issue because it was not the defendant who acted in reliance on a false or unkept promise"), *cert. denied,* 517 U.S. 1225 (1996).

Specifically, the first "promise" that failed to work out, and which apparently led to the filing of the withdrawal motion prior to sentencing, involved the possibility of petitioner's receiving a sentence of less than eight years if he were to cooperate with law enforcement. It is petitioner's position that the State failed to fulfill its part of the plea bargain when it rebuffed his attempts to cooperate and cut off further dealings with him. However, upon review of the transcript of the hearing held on petitioner's motion to withdraw his plea, the undersigned is convinced that it was petitioner, not the State, who failed to fulfill this part of the plea agreement.

RENU agent Joseph Lee testified at the hearing that although he had indicated to defense counsel he "would be willing to entertain giving [petitioner] further consideration" for a lesser sentence if petitioner gave "information that would probably lead to the arrest of a fugitive, and give us information about a subject[, Charles Bea,] we knew to be a large narcotics dealer here in the tri-state area," no useful information was forthcoming from petitioner. (Doc. 3, Ex. M, Tr. 84-85, 89-97, 115-34).[7] Indeed, according to Lee, petitioner gave "false"

_____

[7] Lee testified that on March 9, 2004, petitioner gave him "some information about Charles Bea, where he was supposed to be working at in Georgia," but that petitioner was unwilling to provide any assistance in locating Bea. (Doc. 3, Ex. M, Tr. 89-90, 127-28). Lee stated that although he "ran the number" provided by petitioner and made several phone calls to drug task force agencies in Atlanta about the lead provided by petitioner, he did not get "anywhere with that investigation." (*See id.,* Tr. 90-93; *see also id.,* Tr. 130-34). Lee further testified that when he met with petitioner on March 10, 2004, petitioner did not provide any information that RENU agents did not "already kn[o]w" and that petitioner "started talking about his case again," asserting his innocence and telling the agents "that he didn't have any idea what we were talking about." (*Id.,* Tr. 94-95). Lee stated that he was unable "to get anything useful

23

information to the extent he began to assert his innocence, telling Lee that he was not involved in cocaine trafficking, and that his conversations with Anderson were about marijuana. (*Id.,* Tr. 94, 122-25).

Furthermore, as the Ohio Court of Appeals reasonably determined on direct appeal, to the extent petitioner claims the State reneged on its "promise" that he would be sentenced to an eight-year term of imprisonment if he showed up for sentencing, it is clear from the transcript of the sentencing hearing that the "failure to execute that part of the original plea bargain . . . was entirely of [petitioner's] own doing." (*Id.,* Ex. H, p. 7).

The trial court gave petitioner every opportunity at the sentencing hearing to withdraw the plea to offenses carrying a mandatory ten-year sentence and to reenter a plea to reduced charges for an eight-year prison term in accordance with the parties' original plea agreement. (*See id.,* Tr. 195-96). The court even explained to petitioner that he would not forfeit his right to appeal the denial of his pre-sentence motion to withdraw his guilty plea by entering a new no-contest plea to the reduced charges. (*Id.,* Tr. 196). The prosecutor also reiterated the State's willingness to abide by the original agreement permitting reentry of a plea for an eight-year sentence, even "if the defendant comes back in a week and says I want to re-enter that plea, I want my eight." (*Id.,* Tr. 206-07).

Despite counsel's advice to enter a no-contest plea for an eight-year sentence, which would preserve petitioner's appellate rights, as well as the trial court's express admonition that it was not going to revisit its determination upholding the validity of petitioner's guilty plea and that it, therefore, would have to sentence petitioner to a ten-year prison term if he chose not to reenter a plea to reduced charges, petitioner instead elected to steadfastly maintain his innocence, to challenge his attorneys' performance in advising him to enter a guilty plea in the first place, and to assert his right to a jury trial. (*See id.,* Tr. 196-205). At that point, the trial court had no other option than to sentence petitioner in accordance with the terms of the March 8, 2004 plea agreement to a ten-year mandatory prison

_____

out of that interview." (*Id.,* Tr. 95, 117). Although Lee indicated at that point that he was still willing to work with petitioner if petitioner would "come in and start telling the truth about his narcotics transactions," petitioner never "followed up again." (*Id.,* Tr. 96). Lee also said he would have given petitioner "some case consideration" if any of the information provided by petitioner had "panned out." (*Id.*).

term.[8]

Finally, petitioner argues in Ground Three of the petition that his guilty plea is invalid, because his counsel provided ineffective assistance by pressuring him to enter the plea despite his insistence that he was innocent.

In order to establish his counsel was ineffective under the Sixth Amendment, petitioner must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hill v. Lockhart,* 474 U.S. 52, 57 (1985). Petitioner has not shown that his counsel's performance was deficient or prejudicial under this test.

Here, petitioner faced a potential prison term of 40 years on the charges contained in the four-count indictment. (*See* Doc. 3, Tr. 32). By pleading guilty to two of the counts on March 8, 2004, petitioner was able to secure the immediate benefit of limiting his prison term to the minimum sentence of the ten to forty year range. (*See id.*). Moreover, because petitioner was released on bond, counsel was

---

[8] Petitioner was made well aware of the fact that by refusing to enter a new plea to reduced charges under the terms of the parties' original plea bargain, the March 8, 2004 plea would remain in effect requiring the imposition of a ten-year sentence. Therefore, petitioner is unable to prevail on any claim that his plea is involuntary because he was unaware of the consequences flowing from his breach of the plea agreement. *Cf. Innes v. Dalsheim,* 864 F.2d 974 (2nd Cir. 1988) (the denial of the defendant's motion to withdraw his plea based on his breach of the plea bargain violated due process in light of ambiguous language in the plea record regarding the potential consequences of such a breach, which could be construed as meaning either the plea would stand with a stiffer sentence or that the plea agreement would fall requiring the defendant to stand trial). *But cf. Hentz,* 71 F.3d at 1176 (*Innes* inapposite in case where the defendant received the sentence for which he bargained); *see also Mask v. McGinnis,* 252 F.3d 85, 89-90 (2nd Cir. 2001) (refusing to apply pre-AEDPA *Innis* decision to overturn guilty plea based on petitioner's breach of a condition set forth in the plea bargain for obtaining probation, given that "neither *Brady* nor *Santobello*–nor any other Supreme Court opinion for that matter–holds, as petitioner intimates, that '[f]ederal due process requires that all conditions placed on a sentence promised in a plea bargain be communicated to the defendant unambiguously'").

able to secure additional concessions from the State to the extent petitioner was granted permission to reenter a new plea to reduced charges for an eight-year prison term as long as he appeared for sentencing and would be considered for an even further reduction in sentence if he cooperated with law enforcement.

It appears from the record that at the time petitioner entered his plea, the State's case against him was strong. The confidential informant, Dondi Anderson, was prepared to testify that he purchased two kilograms of cocaine from petitioner, and that, in a subsequent meeting with petitioner recorded and monitored by law enforcement, he paid petitioner $11,500 as money owed for the first purchase and arranged for another purchase from petitioner of two kilograms of cocaine for $25,000. (*Id.,* Tr. 66-73). In light of this overwhelming evidence of guilt, it was reasonable for counsel to advise petitioner to enter a plea despite petitioner's protestations of innocence. *See, e.g., Meachem v. Keene,* 899 F.Supp. 1130, 1141 (S.D.N.Y. 1995) (and cases cited therein) ("strong advice" to enter a plea based upon the State's evidence of guilt and the likelihood of conviction is not coercive).

As the D.C. Circuit court has explained:

A guilty plea is very typically entered for the simple "tactical" reason that the jury is unlikely to credit the defendant's theory or story. . . . Indeed, so long as a factual basis for the plea exists, . . . a court may accept such a "tactical" guilty plea even from a defendant who continues to assert his innocence.

*Barker v. United States*, 514 F.2d 208, 221 (D.C. Cir.) (citation omitted), *cert.*

*denied,* 421 U.S. 1013 (1975).[9]

Here, the undersigned has no reason to doubt both the trial court's and Ohio Court of Appeals' representations that petitioner was assisted by "highly competent" counsel.  (*See* Doc. 3, Ex. M, Tr. 31, 152, 160, 191, 208-09; Ex. H, p. 5).  It appears from the record of the plea proceeding that petitioner knowingly and intelligently made the tactical choice to enter the plea, which had been skillfully negotiated by counsel, rather than risk a trial and a potential 40-year sentence. Indeed, when questioned by the court at the plea hearing on March 8, 2004, petitioner expressly acknowledged that he was satisfied by the work his attorneys had done for him.  (*Id.,* Tr. 38-39).

On March 9, 2004, the day after petitioner entered his plea, Anderson pleaded guilty to state charges then pending against him and received the benefit of a concurrent sentence for having cooperated with law enforcement in petitioner's and others' criminal investigations.  As both the trial court and the Ohio Court of Appeals insinuated, the concern arises that petitioner's subsequent lack of cooperation, post-plea insistence on his "innocence," and ultimately his decision to withdraw his plea may have been "motivated by his awareness" at that point that the State's key witness  "had lost whatever legal incentive he may have had" to testify against petitioner.  (*See* Doc. 3, Ex. H, p. 5; Ex. M, Tr. 162-64).  This after-the-fact change of heart due to a change in circumstances neither rendered counsel's original advice to enter a plea unreasonable nor affected the voluntary and intelligent nature of petitioner's plea.

---

[9]  It is noted that the only evidence submitted by petitioner in support of his claim of innocence are results of a polygraph examination that he took and passed after he entered his plea.  Such evidence, which petitioner concedes would have been inadmissible at trial, does not trigger any concerns that defense counsel acted unreasonably in advising petitioner to enter a guilty plea.  *Cf. United States v. Scheffer,* 523 U.S. 303, 309-312 (1998) (affirming constitutionality of *per se* rule against the admission of polygraph evidence in part because of the lack of consensus that such evidence is reliable); *State v. Souel,* 372 N.E.2d 1318 (Ohio 1978) (results of polygraph examinations are admissible in Ohio only for purposes of corroboration or impeachment and only if certain provisions, not present here, are satisfied); *United States v. Marlinga,* No. 04-80372, 2005 WL 1459138, at *3 (E.D. Mich. Apr. 12, 2005) (unpublished) (citing the following Sixth Circuit precedents disfavoring the use of polygraph results to prove a party's innocence: *United States v. Thomas,* 167 F.3d 299, 308 (6th Cir. 1999); *United States v. Sherlin,* 67 F.3d 1208, 1216 (6th Cir. 1995), *cert. denied,* 516 U.S. 1082 (1996), *and cert. denied,* 517 U.S. 1158 (1996)); *see also Knickerbocker v. Wolfenbarger,* 212 Fed.Appx. 426, 433 (6th Cir. Jan. 5, 2007) (not published in Federal Reporter).

Accordingly, in sum, the undersigned concludes that petitioner is not entitled to habeas relief based on his claims alleged in the petition challenging the denial of his motion to withdraw his guilty plea, the constitutionality of the plea, and his counsel's performance during the plea proceedings.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's "Motion To Stay Proceedings" (Doc. 4) be **DENIED**.

2.  Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

3.  A certificate of appealability should not issue with respect to claims alleged in the petition, which have been addressed on the merits herein, because petitioner has failed to make a substantial showing of the denial of a constitutional right based on such claims.   *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

4.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should DENY petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 6/28/07                              **/s/Timothy S. Black**

          cbc                             Timothy S. Black
                                          United States Magistrate Judge

K:\BRYANCC\2007 habeas orders\06-166denystymtn.denypet-gp.wpd

28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

———————————————————

La'Mon Akemon,
    Petitioner

vs                                  Case No. 1:06cv166
                                          (Weber, S.J.; Black, M.J.)

Tim Brunsman,
    Respondent

# NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).